**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Israel Moreno,<br><br>             Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>             Defendant. | No. CV-22-00319-PHX-DLR<br><br>**ORDER** |

Plaintiff challenges the denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1). The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 14, "Pl. Br."), Defendant's Answering Brief (Doc. 16, "Def. Br."), Plaintiff's Reply (Doc. 17, "Reply"), and the Administrative Record (Doc 13, "AR"), the Court now reverses the decision of the Administrative Law Judge ("ALJ") and remands for the calculation of benefits.

**I.    BACKGROUND**

Plaintiff filed his DIB application on October 31, 2018, alleging disability beginning March 1, 2019. (AR. at 226.)[1] The Social Security Administration ("SSA") denied his application at the initial and reconsideration levels of administrative review (AR. at 104, 121), and Plaintiff timely

---

[1] Plaintiff initially alleged disability beginning in May 2018 (AR. at 226), but he amended his onset date through counsel in a pre-hearing brief and at the administrative hearing. (AR. at 37, 318.)

requested a hearing before an ALJ. (AR. at 147-48.) ALJ John Gaffney held a telephonic hearing on January 12, 2021, at which the Plaintiff and a vocational expert ("VE") testified. (AR. at 34-54.) On February 8, 2021, ALJ Gaffney issued a decision finding Plaintiff not disabled. (AR. at 12-33.) Plaintiff timely appealed (AR. at 334-39), and on January 13, 2022, the Appeals Council denied Plaintiff's request for review. (AR. at 1-3.) Plaintiff then filed this civil action. (Doc. 1.)

## II.  THE SEQUENTIAL EVALUATION PROCESS AND LEGAL STANDARD

In determining whether a claimant is disabled for the purposes of the Act, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but that burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe, medically-determinable impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where he determines whether the claimant can perform his past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. *Id.* If he cannot, the analysis proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the claimant cannot, he is disabled. *Id.*

When determining whether to reverse the ALJ's decision, this Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will affirm the Commissioner's final ruling unless it is based on legal error or lacks the support of substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla but less than a preponderance. It is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Although the Court must consider the record as a whole, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. THE ALJ DECISION

The ALJ found Plaintiff last met the insured status requirements of the SSA on December 31, 2020, and that he had not engaged in substantial, gainful work activity between his amended alleged onset date of March 1, 2019, and his date last insured. (AR at 18.)[2] The ALJ also determined Plaintiff had severe impairments including post-traumatic stress disorder ("PTSD"), depressive disorder, anxiety disorder, and obesity. (AR. at 18.) Despite these impairments, the ALJ determined Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with additional limitations to "simple, routine, and repetitive tasks; and . . . only occasional time around the public and co-workers." (AR. at 21.) Based on VE testimony, the ALJ found Plaintiff could perform his past relevant work in "machine operator packaging" and was, therefore, not disabled. (AR. at 26.)[3]

### IV. DISCUSSION

Plaintiff raises three issues: (1) whether the ALJ erred in rejecting the treating psychiatrist's medical opinions (Pl. Br. at 11–12); (2) whether the ALJ erroneously discredited Plaintiff's

---

[2] In a claim for Title II benefits, the claimant must establish his disability began before his date last insured. *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017).

[3] An ALJ denied Plaintiff's prior application for Title II disability in a decision dated May 24, 2018. (AR. at 77-88.) An unfavorable ALJ decision creates a presumption of continuing non-disability after the adjudicated period, but the claimant can overcome this by showing changed circumstances, such as a worsening of symptoms, a change in age category, or the emergence of a new impairment the prior ALJ had not considered. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995), as amended (Apr. 9, 1996) (superseded by regulation on other grounds as stated in *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)). ALJ Gaffney found that Plaintiff proved the existence of an impairment not previously considered, and thus, that he had rebutted the presumption. (AR. at 16.)

symptom testimony (Pl. Br. at 17); and (3) whether the ALJ failed to resolve a conflict in the vocational evidence. (Pl. Br. at 23.) For the reasons explained below, the Court finds the ALJ erred by discrediting the opinions of Plaintiff's treating psychiatrist and by rejecting the Plaintiff's symptom testimony without citing specific, clear, and convincing reasons.[4]

**A.   The ALJ erred by concluding Dr. Purewal's medical opinions were not persuasive.**

In January 2017, the SSA amended the regulations governing the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017). The new regulations apply to applications filed on or after March 27, 2017, and are applicable here. 20 C.F.R. § 404.1520c.[5] These regulations provide that ALJs will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." *Id*. § 404.1520c(a). Instead, ALJs must articulate the persuasiveness of medical opinions using the factors set forth in the regulations. *Id*. §§ 404.1520c(a)–(b). The "most important" of these factors are supportability and consistency. *Id*. § 404.1520c(a). Regarding supportability, the new regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

In *Woods v. Kijakazi*, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." 32 F.4th 785, 787 (9th Cir. 2022). Now, an ALJ's decision to discredit any medical opinion "must simply be supported by substantial evidence." *Id.* However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how

---

[4] Because the Court deems remand for payment to be the appropriate remedy on these issues, it need not address Plaintiff's third assignment of error.

[5] Plaintiff filed his current application in October 2018. (AR. at 15.)

persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792. Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . [,]" except where the ALJ finds two medical opinions on the same issue are both equally supported and consistent with the record, but not the exactly the same. *Id.* (citations omitted).

Plaintiff's treating psychiatrist, Dr. Satinder Purewal, completed two assessments of the Plaintiff's ability to perform work-related activities during the relevant period. (AR. at 443-44, 486-87.) On March 5, 2020, Dr. Purewal opined Plaintiff had a "severe" limitation (defined as being off-task "greater than 21% of an 8-hour work day") in his ability to relate to others and to respond to customary work pressures. (AR. at 443.) Dr. Purewal assigned "moderately-severe" limitations (defined as being off-task "16-20% of an 8-hour work day") in Plaintiff's ability to engage in daily activities, the degree of his "constriction of interests," and in his abilities to understand, carry-out, and remember instructions, respond appropriately to supervision and coworkers, perform simple tasks, and sustain a work pace. (AR. at 443-44.) Dr. Purewal further opined Plaintiff's medications could cause limitations resulting from side effects. (AR. at 444.) Dr. Purewal noted the limitations he assigned "result[ed] from objective, clinical, or diagnostic findings which have been documented" by him, or elsewhere in the medical record. (AR. at 444.) On November 10, 2020, Dr. Purewal completed an updated assessment noting that Plaintiff now suffered from "severe" limitations in his daily activities, his ability to relate to others, and his abilities to respond appropriately to coworkers and customary work pressures. (AR. at 486.)

In the decision, the ALJ concluded Dr. Purewal's opinions were "unpersuasive because [they] are not supported by relevant objective medical evidence, inconsistent with evidence from other medical and nonmedical sources, and contradicted by other factors." (AR. at 24.) Regarding the supportability factor, the ALJ noted Dr. Purewal did not provide "a supportable explanation"

for his conclusions, as "there were insufficient references to medically acceptable objective clinical or diagnostic findings." (AR. at 24.) The ALJ also noted Dr. Purewal "merely checked boxes on a form and the lines on the form allowing for an explanation were inadequately completed." (AR. at 24.) Regarding consistency, the ALJ concluded the objective evidence—including Plaintiff's "use of only standard treatment," "his lack of psychiatric hospitalizations and in-patient or similar residential treatment[,]" and his daily activities—were inconsistent with Dr. Purewal's opinions. (AR. at 24-25.) Plaintiff argues the ALJ erred by not properly addressing the regulatory factors and by not citing substantial evidence in support of his conclusions. (Pl. Br. at 13-17.) The Court agrees.

While the ALJ "may take into account the quality of the explanation when determining how much weight to give a medical opinion[,]" and "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions," *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (quotations and citations omitted), it is also well-settled that when a provider's treatment notes support his opinion, an ALJ cannot refute that assessment due to the lack of an explanation. *E.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("Dr. Riley's assessments are of the 'check-box' form and contain almost no detail or explanation. But the record supports Dr. Riley's opinions because they are consistent both with Claimant's testimony at the hearing and with Dr. Riley's own extensive treatment notes which, as discussed above, the ALJ largely overlooked."); *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) ("[T]he ALJ failed to recognize that the opinions expressed in check-box form . . . were based on significant experience with Garrison and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."); *see Orn*, 495 F.3d at 634 (finding supportive treatment records and objective evidence lends "supportability" to a medical opinion); *see Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, *and* inadequately supported by clinical findings.") (emphasis added); *cf. Venezia v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00961-PHX-DGC, 2023 WL 3167884, at *5-6 (D. Ariz. May 1, 2023) (holding an ALJ may properly reject an opinion due to the lack of explanation, but noting the "ALJ thoroughly

discussed [the doctor's] treatment records and found that Plaintiff's mental health impairments generally were well-controlled with medications and her mental state examinations were within normal limits.") The Commissioner judges the "supportability" of a medical opinion by the relevant "objective medical evidence and supporting explanations presented by a medical source[.]" 20 C.F.R. § 404.1520c(c)(1). "Objective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 404.1502(g). The concept of "supportability" thus encapsulates the physician's notes as well as his explanation. *Lisa R. v. Comm'r of Soc. Sec.*, No. 3:22-CV-5296-DWC, 2023 WL 1277694, at *3 (W.D. Wash. Jan. 31, 2023) ("[The provider's] treatment notes are exactly the type of 'objective medical evidence' the ALJ must consider when evaluating a medical opinion's supportability."); *Villalon v. Kijakazi*, No. 1:20-CV-01830-SKO, 2022 WL 4388264, at *7 (E.D. Cal. Sept. 22, 2022) ("The lack of support by FNP Martin's own treatment notes and objective findings was a proper consideration in evaluating the supportability of her opinion.").

The record contains ample treatment records from Dr. Purewal documenting 21 separate visits over nearly two years, and those records contain numerous psychiatric signs relevant to the limitations he assigned. (AR. at 445-70, 477-85.) On many occasions, Dr. Purewal documented significant clinical findings, including Plaintiff's difficulties with focus and concentration (AR. at 445, 448, 451, 453, 455, 457, 459, 461, 463, 465, 477, 480, 483); his failure to groom (AR. at 445, 448, 451, 453, 455, 457, 459, 461, 463, 465, 477, 480, 483); his cooperative but anxious and distractible behavior (AR. at 382, 384, 386, 388, 390, 392, 445, 448, 451, 453, 455, 457, 459, 461, 463, 465, 467, 469, 477, 481, 483); his depressed, anxious, withdrawn, apathetic, irritable, or angry mood with congruent affect (AR. at 382, 384, 386, 388, 390, 392, 445, 448, 451, 453, 455, 457, 459, 461, 463, 465, 467, 469, 477-78, 481, 483-84); his delusions, hallucinations, or misinterpretations (AR. at 382, 390, 392, 445, 448, 451, 453, 455, 457, 459, 461, 463, 465, 467, 469, 478, 481, 484); and his difficulties making decisions (AR. at 445, 448, 451, 453, 455, 457,

459, 461, 463, 465, 478, 481, 484). While these examinations contain some normal findings, they are far from the "mostly unremarkable" mental status examinations the ALJ described. (AR. at 22.) Moreover, Dr. Purewal indicated in his March 2020 assessment that Plaintiff's "limitations result from objective, clinical, or diagnostic findings which have been documented either by [him], or elsewhere in the [Plaintiff's] medical records[.]" (AR. at 444.)[6] It is clear what Dr. Purewal's conclusions were based upon. The fact he omitted whatever terse explanation the form would have allowed does not mean his conclusions are unsupported under the regulations.[7]

Defendant argues the ALJ discussed Dr. Purewal's treatment records earlier in the decision, which contained "divergent medical findings[,]" and that "the more benign findings" constitute substantial evidence supporting the ALJ's conclusion that Dr. Purewal's opinions are unpersuasive. (Def. Br. at 5.) In his discussion of Dr. Purewal's opinions, the ALJ cited no specific objective evidence; he merely asserted "the objective medical evidence . . . does not support the assessments." (AR. at 24.) Elsewhere in the decision, he characterized Plaintiff's mental status examinations as "mostly unremarkable" and cited specific, benign findings from Dr. Purewal's treatment notes (AR. at 22.) As explained above, however, the conclusion Plaintiff's examinations were "mostly unremarkable" is unsupported. The ALJ listed normal findings from Dr. Purewal's notes, including the Plaintiff's language, attention, concentration, behavior, speech, thought processes, memory, insight, and judgment (AR. at 22), but those notes also reveal that Plaintiff consistently exhibited other clinical signs supportive of significant functional limitations, such as those outlined above. While it is the ALJ's province to weigh the evidence, *see Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citations omitted), he cannot

---

[6] The Commissioner notes that in Dr. Purewal's November 2020 assessment, he indicated the limitations he assigned did *not* "result from objective, clinical, or diagnostic findings" documented in the record (Def. Br. at 6, citing AR. at 487), which implies Dr. Purewal based his conclusions upon the Plaintiff's self-reported symptoms and limitations. But the ALJ does not cite this as a basis to discredit Dr. Purewal's opinions, and this Court is confined to the rationale used by the ALJ. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Moreover, this rationale would still not apply to Dr. Purewal's March 2020 assessment, wherein he indicated his conclusions were predicated upon objective evidence. (AR. at 444.)

[7] The forms permitted "comments," but the space provided was large enough only for a single line of text. (AR. at 444, 487.)

"cherry-pick" evidence to support an unfavorable decision. *Garrison*, 759 F.3d at 1017 n. 23 (noting "[t]he ALJ was not permitted to 'cherry-pick' from [ ]mixed results to support a denial of benefits[.]") (quoting *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir.2011)).

The ALJ further found Dr. Purewal's opinions were inconsistent with the record because Plaintiff received only "standard treatment," he was never hospitalized, and he engaged in a "wide range of ordinary tasks." (AR. at 25.) But it is unclear why undergoing "standard treatment" for a medical issue would be a legitimate basis to discredit a claimant. *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) ("[T]he failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability.") Further, medication for the treatment of psychiatric disorders is generally not considered to be "conservative treatment," and not every disabling impairment requires the claimant be hospitalized. *Gary I. v. Kijakazi*, No. 2:20-CV-07882-GJS, 2022 WL 220918, at *5 (C.D. Cal. Jan. 24, 2022) (noting that, with respect to mental impairments, "[c]ourts have established that medication treatment regimens with such [anti-depressant and anxiety] medications are not conservative[,]" and noting that a claimant need not "undergo psychiatric hospitalization to be considered disabled.") (citations omitted); *Valentine v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05127-PHX-JJT, 2020 WL 7022236, at *5 (D. Ariz. Nov. 30, 2020) (in a step two analysis, noting that "[d]efendant appears to be arguing that anything short of in-patient hospitalization for a mental disorder is considered 'conservative treatment,' but does not cite any case law for this proposition."); *P.E. v. Saul*, 445 F. Supp. 3d 306, 334-35 (N.D. Cal. 2020) ("Courts in this circuit have found that psychiatric hospitalization is not a benchmark for conservative treatment.") (citation omitted). It is also noteworthy that Dr. Purewal repeatedly adjusted Plaintiff's medications to diminish side effects or increased symptoms. (AR. at 382-83 (Benztropine, Neurontin, Restoril added), 388 (Zaleplon, Tegretol added), 390 (Trazodone added), 469 (Zyprexa added)).

Regarding Plaintiff's limited daily activities, including bathing and dressing himself, watching television, driving (rarely), cleaning (rarely), and taking out the trash (AR. at 20, 24), "there is neither evidence to support that [Plaintiff's] activities were 'transferable' to a work setting

nor proof that [Plaintiff] spent a 'substantial' part of his day engaged in transferable skills." *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability[,]" *id.* (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)), and the Court finds the Plaintiff's activities, including maintaining basic hygiene (with reminders), watching television, and performing the simplest household chores, particularly uncompelling. The Court also notes that while the Plaintiff testified to driving a few times per week, he elaborated that this would lead to road rage and angry confrontations with other drivers. (AR. at 41-42.) There is nothing apparent from the record to suggest Plaintiff's activities contradicted his testimony. *Orn*, 495 F.3d at 639. For these reasons, the ALJ erred by rejecting Dr. Purewal's opinions.

**B.     The ALJ did not cite clear, convincing reasons to discredit Plaintiff's symptom testimony.**

An ALJ must perform a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets this burden and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quotations omitted). Importantly, the claimant "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quotations omitted). The ALJ's assessment must be supported by the record and be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.

At the hearing, Plaintiff testified he suffered from PTSD, anger problems, and "bipolar/depression." (AR. at 39.) He testified to worsening anger after an altercation with a coworker at his last job, that he continued to have difficulty controlling his anger, and that his

anger manifests in yelling, punching doors, and breaking things. (AR. at 39-40.) He also experiences road rage and sometimes confronts other drivers. (AR. at 41–42.) He described becoming frustrated at the grocery store, yelling at the register, or leaving "if it takes [] too long." (AR. at 42.)

Plaintiff further testified he has "seen a number of people that have been killed[.]" (AR. at 42.) He repeatedly checks his doors and locks because he often hears noises that indicate someone might be breaking into his home. (AR. at 42.) Plaintiff stated that when he hears such noises at night, he grabs a knife and looks around the house "making sure we're all okay." (AR. at 42–43.) Plaintiff also testified that he always looks around when in public and believes that people are out to get him, which interferes with his memory and concentration. (AR. at 43.)

Regarding his anxiety, Plaintiff testified that his symptoms include increased heartrate, sweaty palms, racing thoughts, and shaking legs. (AR. at 43.) He experiences these symptoms every other day for about thirty minutes to an hour. (AR. at 43.) He also alleges that he has difficulty both falling asleep and staying asleep due to his racing thoughts. (AR. at 43–44.) He sleeps three-to-four hours at night and naps for another one-to-two hours in the mornings and afternoons. (AR. at 44.)

In the decision, the ALJ concluded Plaintiff's "statements regarding the alleged intensity, persistence, and limiting effects of his symptoms are inconsistent with the objective medical evidence and the other evidence of record." (AR. at 23.) The ALJ concluded the medical evidence belied the severity of the symptoms Plaintiff described, and that the examination findings of record supported the RFC determination. (AR. at 23.) He found that Plaintiff's condition was "amenable to conservative treatment – medication[,]" and that medications "have been relatively effective in controlling the [Plaintiff's] symptoms." (AR. at 22, citations omitted.) The ALJ cited evidence that Plaintiff's "language, attention and concentration, behavior, speech, thought process, associations, memory, intellectual ability, insight, and judgment were normal[,]" that he was "able to focus and concentrate well," and that his wife reported his condition had improved in July 2019. (AR. at 22.) The ALJ acknowledged that "[l]ater treatment records[,]" spanning almost one year, "note the claimant had difficulty with focus and concentration[,]" but that the RFC accounted for these

symptoms. (AR. at 22.) The ALJ further concluded that "the degree of the [Plaintiff's] subjective complaints is not comparable to the extent of treatment sought by the claimant[,]" and that Plaintiff pursued "conservative," rather than aggressive, treatment. (AR. at 23.) The ALJ also impugned Plaintiff by noting his "described daily activities[ ]are not limited to the extent one would expect, given [Plaintiff's] complaints of disabling symptoms and limitations." (AR. at 23.) Earlier in the decision, the ALJ noted Plaintiff's reported daily activities included dressing, bathing (with reminders), watching television, taking out the trash, occasionally driving, and cleaning "rarely." (AR. at 20.) For the reasons explained in further detail below, none of the ALJ's reasons are adequately supported.

While evidence of a medical condition amenable to treatment could support a clear, convincing basis to discredit a claimant's symptom testimony, *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"), there is no indication Plaintiff's condition was amenable to treatment. His treatment records consistently reflect significant, ongoing reports of anxiety, irritability, depression, and paranoia, and his provider continually documented noteworthy symptoms such as delusions and hallucinations, difficulties with focus and concentration, anxious or distractible behavior, and irritable mood, throughout treatment. (AR. at 445, 448, 451, 453, 477-78, 480-81, 483-84.) As to Plaintiff's alleged improvement, the ALJ could only cite an isolated example: Plaintiff's wife's report in July 2019 that he was "doing a lot better" on medications. (AR. at 386.) Contrary to the ALJ's conclusions, however, Dr. Purewal continued to document Plaintiff's significant symptoms for the remainder of the relevant period. (AR. at 382-83, 448, 451, 453, 455, 457, 459, 461, 463, 465.) Of note, Dr. Purewal repeatedly documented Plaintiff's delusions, hallucinations, or misinterpretations. (AR. at 382, 390, 392, 445, 448, 451, 453, 455, 457, 459, 461, 463, 465, 467, 469, 478, 481, 484.) There is simply no evidence Plaintiff's improvement was sustained. As the Ninth Circuit explained in *Garrison*,

> [I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years

and to treat them as a basis for concluding a claimant is capable of working.

759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.2001)). The conclusion that Plaintiff's medications improved his overall condition and controlled his symptoms is not supported and is not a rational interpretation of the record. *Thomas*, 278 F.3d at 954.

Moreover, and as previously explained, the treatment of psychiatric symptoms with medications does not amount to "conservative" treatment. *Franco v. Comm'r of Soc. Sec.*, No. 1:18-CV-1059-JLT, 2020 WL 1317342, at *6 (E.D. Cal. Mar. 20, 2020) (collecting cases). Finally, as for the Plaintiff's daily activities, the record does not establish Plaintiff engaged in activities transferable to a work setting for a substantial part of the day. *Orn*, 495 F.3d at 639. Nor do the activities the ALJ cited contradict the Plaintiff's symptom testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Plaintiff admitted to driving, but testified this activity can fuel angry outbursts where he confronts other drivers. (AR. at 41-42.) The ALJ cites Plaintiff's reported activities to the consultative examiners as evidence of his functioning, but even these reports reflect Plaintiff needed reminders to bathe, that he only rarely drove, that he slept during the day, watched television, avoided socializing, "rarely" cleaned, and took out the trash. (AR. at 403.) Plaintiff reported to the physical examiner that "[h]e is able to complete self-care activities including meals, hygiene, and light housework . . . [but] these tasks are progressively difficult due to his psychiatric/cognitive disorders and do take an extended period of time to complete." (AR. at 375.) Plaintiff's reported activities in this case simply do not rise to the clear-and-convincing threshold. The ALJ failed to cite clear, convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.[8]

---

[8] Since "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence[,]" *Reddick*, 157 F.3d at 722, the Court need not address the ALJ's conclusion that the objective evidence contravened Plaintiff's symptom testimony. (AR. at 22.) Even if substantial evidence supported that conclusion, the ALJ must still cite some other valid, supported reason for discrediting the Plaintiff's testimony. *See id.*

**C.     Plaintiff has satisfied the credit-as-true requirements and remand for the payment of benefits is appropriate.**

Before Plaintiff is entitled to the calculation and award of benefits, the Court must find that "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

The Commissioner does not adequately explain the usefulness of additional proceedings here. There are no ambiguities or gaps in the record, nor are there material issues that necessitate additional fact-finding. Plaintiff's date last insured is December 31, 2020, so any additional administrative proceedings, or testimony elicited there, would be even further removed from the relevant period. The Court has found the ALJ improperly rejected both Plaintiff's symptom testimony and the opinions of his treating psychiatrist. If the trier-of-fact credited this evidence, a finding of disability must ensue. The vocational expert testified an individual who is off-task 10% or more of a workday would be unable to perform full-time work. (AR. at 50-51.) Dr. Purewal indicated Plaintiff would be off-task or unable to function for greater than 21% of the workday in some respects, and 16-20% in other respects. (AR. at 444, 487.) Dr. Purewal's assessments are clearly work-preclusive, and the Court finds no "serious doubt" as to Plaintiff's disability. *Garrison*, 759 F.3d at 1021. As such, the requirements of the credit-as-true rule are satisfied, and the Court hereby reverses and remands the decision of the ALJ with instructions to calculate and award benefits.

**IT IS ORDERED** that the February 8, 2021 decision of the ALJ is reversed and remanded for the payment of benefits.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 2nd day of August, 2023.

Douglas L. Rayes
United States District Judge